# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| PHE, Inc., | ) |
| | ) |
|     *Plaintiff,* | ) |
| | ) |
| v. | ) Case No. TBD |
| | ) |
| DOES 1-96. | ) **JURY TRIAL DEMANDED** |
| | ) |
|     *Defendants.* | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION
<u>FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS……………………………………………………… i

TABLE OF AUTHORITIES…………………………………………………... iii

I.  Introduction………………………………………………………. 1

II.  Argument………………………………………………………...... 1

    a.  Precedent Allows for Expedited Discovery to Identify the Doe
       Defendants……………………………………….................................. 1

    b.  Plaintiff Alleges Copyright Infringement and Contributory Copyright
       Infringement Based on Doe Defendants' BitTorrent Activity……….. 3

       i.  Defendants' Infringing Activity………………………… 3

       ii.  Preliminary Identification of Defendants……………….. 5

       iii.  Plaintiff's Confirmation of Copying………………….. 7

       iv.  The Specific Information Plaintiff Seeks……………… 7

    c.  Plaintiff Can Show that Good Cause Exists for the Expedited
       Discovery…………………………………………………………… 8

       i.  Plaintiff can show Irreparable Harm from the Past and Ongoing
         Infringement of the Copyrighted Motion Picture…………….... 8

       ii.  The Expedited Discovery will Cause no Prejudice to Defendants... 9

       iii.  The Forward Movement of the Case Turns on the Information
         Sought by the Expedited Discovery, which has Limited Availability… 9

    d.  The Discovery Sought is Proper as to All 96 Doe Defendants…………...... 10

       i  Each Doe Defendant Participated in the Same Transaction or
         Occurrence or Series of Transactions.………………………… 11

       ii.  There are Questions of Law or Fact Common to All Defendants…… 14

       iii.  There is no Prejudice to any Party or Needless Delay……………….. 15

III.    Conclusion………..……………..……................................................    15

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page**

*AF Holdings v. Does 1-97,* ...............................................................................  2
    No. C 11-3067 CW, 2011 WL 5195227 (N.D. Cal. Nov. 1, 2011)

*AF Holdings LLC v. Does 1-1,058,* ...............................................................*passim*
    ---F. Supp. 2d ---, 2012 WL 3204917 (D.D.C. Aug. 6, 2012)

*Arista Records LLC v. Does 1-54,* ...............................................................*passim*
    No. 4:08-cv-1289 WL 4104563 (E.D. Mo. Aug. 29, 2008)

*Call of the Wild Movie, LLC v. Does 1-1062,* ............................................  14
    770 F. Supp. 2d 332 (D.D.C. 2011)

*Coke v. Loadmaster Corp.,* ....................................................................  10, 14
    420 Fed. Appx. 647 (8th Cir. 2011)

*Combat Zone, Inc. v. Does 1-28* .................................................................  1
    No. 4:12-cv-01363, Docket No. 6 (Sealed) (E.D. Mo. Aug. 15, 2012)

*Country Mut. Ins. Co. v. Wade,* ................................................................  2
    No. 4:10-cv-193-TIA, 2010 WL 3239105 (E.D. Mo. Aug. 13, 2010)

*Digital Sin, Inc. v. Does 1-27,* ...................................................................  1
    No. 12-cv-3873, 2012 WL 2036035 (S.D.N.Y. June 6, 2012)

*Digital Sin, Inc. v. Does 1-176,* ............................................................  1, 3, 10
    279 F.R.D. 239 (S.D.N.Y. Jan. 30, 2012)

*Digital Sin, Inc. v. Does 1-245,* ................................................................  2
    No. 11-cv-8170, 2012 WL 1744838 (S.D.N.Y. May 15, 2012)

*Green v. Doe,* ..........................................................................................  1
    260 Fed. Appx. 717 (5th Cir. 2007)

*Hard Drive Prods., Inc. v. Does 1-59,* .......................................................  2
    No. H-12-0699, 2012 WL 1096117 (S.D. Tex. Mar. 30, 2012)

*In re EMC Corp.,* .....................................................................................  13
    677 F.3d 1351 (Fed. Cir. May 4, 2012)

*London-Sire Records, Inc. v. Doe 1,* ..........................................................  15
    *542 F. Supp. 2d 153 (D. Mass. 2008)*

*Maclin v. Paulson*,............................................................................................................ 1
   627 F.2d 83 (7th Cir. 1980)

*Malibu Media, LLC v. Does 1-10*,.................................................................................. 2
   No. CV-12-1146, 2012 WL 1020455 (E.D.N.Y. Mar. 26, 2012)

*Malibu Media, LLC v. Does 1-11*,.................................................................................. 1
   No. 12-cv-1061, 2012 WL 2921227 (S.D. Cal. Jul. 17, 2012)

*Malibu Media, LLC v. Does 1-23*,.................................................................................. 1
   No. 12-cv-00836, 2012 WL 1144822 (D. Co. Apr. 4, 2012)

*McCoy v. St. Louis Pub. Schools*,............................................................................... 14
   No. 4:11-cv-918 CDP, 2011 WL 4857931 (E.D. Mo. Oct. 13, 2011)

*Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co.*,................................................ 8
   900 F. Supp. 1287 (C.D. Cal. 1995)

*Monsanto Co. v Sauceda*,.............................................................................................. 2
   No. 4:11-cv-2249, 2011 WL 65106 (E.D. Mo. 2011)

*New Sensations, Inc. v. Does 1-1474*,............................................................................ 3
   No. C 11-2770 MEJ, 2011 WL 4407222 (N.D. Cal. Sept. 22, 2011)

*Patrick Collins, Inc. v. Does 1-2590*,................................................................ 11, 14, 15
   No. C 11-2766 MEJ, 2011 WL 4407172 (N.D. Cal. Sept. 22, 2011)

*Raw Films, Ltd. v. Does 1-11*,...............................................................................*passim*
   No. 12-cv-368-WQH, 2012 WL 684763 (S.D. Cal. Mar. 2, 2012)

*Third Degree Films v. Does 1-36*,.............................................................................2, 13
   No. 11-cv-15200, 2012 WL 2522151 (E.D. Mich. May 29, 2012)

*United Mine Workers v. Gibbs*,.................................................................................... 11
   383 U.S. 715 (1966)

*Valentin v. Dinkins*,........................................................................................................ 1
   121 F.3d 72 (2d Cir. 1997)

*Warner Bros. Entm't Inc. v. X One X Prods.*,................................................................ 8
   644 F.3d 584 (8th Cir. 2011)

*World Digital Rights, Inc. v. John Does 1-80*,............................................................... 2
   No. 2:12-cv-225, 2012 WL 1623871 (M.D. Fla. May 9, 2012

*XPays, Inc. v. Does 1-18,*………………………………………………..   1
      No. 4:12-cv-01405, Docket No. 11 (E.D. Mo. Aug. 20, 2012)


Statutes

FED. R. CIV. P. 20 (a)……………………………………………   14

FED. R. CIV. P. 20 (a)(2)…………………………………………   10

FED. R. CIV. P. 20 (a)(2)(B)………………………………………   14

FED. R. CIV. P. 26(b)(1)…………………………………………   2

FED. R. CIV. P. 26(f)………………………………………………   15

FED. R. CIV. P. 45(d)(1)…………………………………………   2

17 U.S.C. § 504…………………………………………………...   9

47 U.S.C. § 551 (c)……………………………………………...   10

## I.     Introduction

Plaintiff PHE, Inc., a filmmaker and motion picture copyright-holder, alleges that 96 Doe Defendants infringed its copyright in the Motion Picture *Buffy the Vampire Slayer XXX: A Parody* ("Motion Picture"). Each Doe used an Internet file sharing protocol called BitTorrent to copy and reproduce the Motion Picture over the Internet. Defendants' actions resulted in the unauthorized, viral dissemination of its Motion Picture. Despite Plaintiff's best efforts, each Doe can only be identified by his or her IP address. Plaintiff's investigator utilized geolocation technology which places, upon information and belief, each IP address in this suit within Missouri. Internet Service Providers ("ISPs") assign these IP addresses; these ISPs are necessary to identify the Does. Plaintiff can proceed with this action once it is in possession of identification information. Accordingly, Plaintiff seeks leave to serve limited discovery prior to a Rule 26(f) conference on ISPs to determine the identities of the Doe Defendants.

## II.    Argument

### a.   Precedent Allows for Expedited Discovery to Identify the Doe Defendants.

Courts allow expedited discovery to identify Doe defendants. *Arista Records LLC v. Does 1-54*, No. 4:08-CV-1289, 2008 WL 4104563, at *1 (E.D. Mo. Aug. 29, 2008).[1] This standard extends to courts throughout the country.[2] In actions against BitTorrent Defendants, courts consistently grant motions for expedited discovery.[3] This Court permitted expedited

---

[1] *See also Combat Zone, Inc. v. Does 1-28*, No. 4:12-cv-01363, Docket No. 6 (Sealed) (E.D. Mo. Aug.15, 2012); *XPays, Inc. v. Does 1-18*, No. 4:12-cv-01405, Docket No. 11 (Sealed) (E.D. Mo. Aug. 20, 2012).

[2] *See, e.g., Valentin v. Dinkins*, 121 F.3d 72, 75-76 (2d Cir. 1997) (plaintiff should have been permitted discovery to reveal defendant's identity); *Green v. Doe*, 260 Fed. Appx. 717, 721 (5th Cir. 2007) (courts regularly allow discovery to identify Doe defendants); *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) (where "party is ignorant of defendants' true identity...plaintiff should have been permitted to obtain their identity through limited discovery").

[3] *See, e.g., Digital Sin, Inc. v. Does 1-27*, No. 12 Civ. 3873, 2012 WL 2036035 (S.D.N.Y. June 6, 2012); *Malibu Media, LLC v. John Does 1-23*, No. 12-cv-00836, 2012 WL 1144822 (D. Colo. Apr. 4, 2012); *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239 (S.D.N.Y. Jan. 30, 2012); *Malibu Media LLC v. John Does 1*

discovery of an ISP prior to a Rule 26 conference to identify Doe defendants from their IP addresses. *Arista*, 2008 WL 4104563, at *1. *See supra* note 1. While courts have denied or granted such motions with restrictions, those cases are distinguishable: Plaintiffs did not allege defendants' interaction and/or common goal of infringement, or Plaintiffs did not explain the level of participation in the swarm with sufficient detail.[4] *See, e.g., AF Holdings v. Does 1-97*, No. C 11-3067 CW, 2011 WL 5195227 (N.D. Cal. Nov. 1, 2011); *Digital Sin v. John Does 1-245*, No. 11-cv- 8170, 2012 WL 1744838 (S.D.N.Y. May 15, 2012).

Courts have wide discretion in handling discovery matters. *Country Mut. Ins. Co. v. Wade*, No. 4:10-CV-193-TIA, 2010 WL 3239105, at *1 (E.D. Mo. Aug. 13, 2010). *See also* FED. R. CIV. P. 26(b)(1) (a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense[.]") The same broad scope of discovery of Rule 26 applies to non-party discovery that may be sought pursuant to Rule 45. *AF Holdings LLC v. Does 1-1,058*, --- F. Supp. 2d ----, 2012 WL 3204917 (D.D.C. Aug. 6, 2012) (Howell, J.)  (citing Advisory Committee Note on 1946 Amendments to FED. R. CIV. P. ("The added last sentence of amended [Rule 45]d(1) properly gives the subpoena for documents and tangible things the same scope as provided in Rule 26(b).")).

This Court uses a good cause standard for expedited discovery. *Arista*, 2008 WL 4104563, at *1. *See also Monsanto Co. v. Sauceda*, No. 4:10-cv-2249, 2011 WL 65106, at *2

---

through 11, No. 12-cv-1061, 2012 WL 2921227 (S.D. Cal. Jul. 17, 2012); *Malibu Media, LLC v. Does 1-10*, No. CV 12-1146, 2012 WL 1020455 (E.D.N.Y. Mar. 26, 2012); *Hard Drive Prods,, Inc. v. Does 1-59*, No. H-12-0699, 2012 WL 1096117 (S.D. Tex. Mar. 30, 2012); *World Digital Rights, Inc. v. John Does 1-80*, No. 2:12-cv-225, 2012 WL 1623871 (M.D. Fla. May 9, 2012); *Raw Films, Ltd. v. John Does 1-11*, No. 12-cv-368, 2012 WL 684763 (S.D. Cal. 2012).

[4] In *AF Holdings*, the court granted expedited discovery for Doe 1, but severed Does 2-97. The court held that plaintiff did not allege that the "Doe Defendants exchanged any piece of the relevant [infringing] file with each other" or that there was contemporaneous interaction. *Id.* at *2-3. This case is distinguishable. Complaint at ¶ 14. Also, *AF Holdings* ignores that when wrongdoers work through separate cells, they work as part of a single unit or enterprise (such as a swarm), and are by nature working together in pursuit of both individual goals and the ultimate goal of the group, even though such actors may not directly interact with each other. *See, e.g., Third Degree Films v. Does 1-36*, No. 11-cv-15200, 2012 WL 2522151, at *10 (E.D. Mich. May 29, 2012).

(E.D. Mo. 2011). Good cause exists where the need for expedited discovery outweighs prejudice to the responding party. *Id.* Also, where plaintiff can show that expedited discovery furthers the interests of justice and presents minimal inconvenience to the ISPs. *New Sensations, Inc. v. Does 1-1474*, No. C-11 2770 MEJ, 2011 WL 440722, at *4 (N.D. Cal. Sept. 22, 2011). *See also Digital Sin*, 279 F.R.D. at 241-242; *Raw Films*, 2012 WL 684763, at *4.

In *Arista*, this Court found good cause existed for expedited discovery of subscriber information from an ISP where Plaintiff was able to identify 1) irreparable harm to the copyright holder; 2) expedited discovery caused no prejudice to defendants; and 3) forward movement of the case turned on information sought by expedited discovery, which had limited availability. *Id.*

### b.  Plaintiff Alleges Copyright Infringement and Contributory Copyright Infringement Based on Doe Defendants' BitTorrent Activity.

Here, the Doe Defendants used an online media distribution system called BitTorrent to download and distribute the copyrighted Motion Picture. Complaint at ¶¶ 9-11. Plaintiff engaged Copyright Defenders, Inc. ("Copyright Defenders") to monitor and stop this infringing activity. Declaration of Matthias Schroeder Padewet at ¶¶ 1,6.

### i.  Defendants' Infringing Activity

The Internet is a vast collection of interconnected communicating computers and networks.  Mr. Padewet Decl. at ¶ 4.  In allowing hundreds of millions of people around the world to freely exchange ideas and information, the Internet has afforded opportunities for the wide-scale infringement of copyrighted motion pictures.  *Id.*  Once a motion picture has been transformed into an unsecured digital format, it can be copied and distributed an unlimited number of times over the Internet. *Id*. To do this, many individuals use online media distribution systems or so-called "peer-to-peer" ("P2P") networks.  *Id.* at ¶ 5.  P2P networks are usually computer systems that enable Internet users to (1) make works stored on each user's computer

available for copying by other users or peers; (2) search for files stored on other users' computers; and (3) transfer exact copies of files from one computer to another. *Id.*

Millions of people unlawfully use P2P networks to connect to other's computers to upload (distribute) and/or download (copy) copyrighted material. *Id.* at ¶ 22. These P2P systems cause a "viral" distribution of digital files: each user who copies a digital file from another user can then distribute the file to other users and so on. *Id.* Here, Plaintiff observed infringement, but does not know the true identities of those committing the infringement. *Id.* at ¶¶ 23-25, 31. Infringement begins when an initial file-provider intentionally elects to share a file using a P2P network, called seeding. *Id.* at ¶ 8. Other users ("peers") on the network connect to the seed file to download. *Id.* The P2P protocol at issue in this suit is called "BitTorrent." *Id.* at ¶ 9. What makes BitTorrent unique is that, as yet additional peers request the same file, each new user becomes a part of the network from where the file can be downloaded. *Id.* Unlike a traditional P2P network, each new downloader is receiving a portion of the data from each connected user who has already downloaded a part of the file that together comprises the whole. *Id.* Thus, every peer who has a copy of the infringing copyrighted material on a P2P network investigated by Copyright Defenders' software must also be a source of download for that infringing file. *Id.*

To have engaged in the Motion Picture's distribution, each participating peer intentionally obtained a torrent file for the Motion Picture from a BitTorrent or torrent website. *Id.* at ¶¶ 10-15. Each peer then loaded that torrent file into a computer program that reads such files. *Id.* Once loaded, the BitTorrent program employed a protocol to initiate simultaneous connections to hundreds of other peers possessing and sharing copies of the Motion Picture described in the file. *Id.* Once connected, the program coordinated the copying of the Motion

Picture among participating peers. *Id.* at ¶ 17. As the film was copied to the peers' computers piece by piece, the downloaded pieces were immediately available to others seeking the file. *Id.* Torrent files contain a unique hash identifier generated by a mathematical algorithm. *Id.* at 13. These files have unique "info-hashes" which act as "roadmaps" to the addresses of other users who are sharing these media files and specifics about those media files. *Id.* The hash identifier of the torrent file utilized by peers to distribute and share Plaintiff's Motion Picture is BD9418995FBB78D888D7208003B7A00DC6B6980D ("Hash BD94") *Id.* Each peer is a member of one "swarm" (*i.e.*, group of BitTorrent peers); the swarm members were collectively connected to share the particular hash file (here, the Hash BD94 file containing the Motion Picture), and this swarm is associated with only one hash identifier, Hash BD94. *Id.* at ¶ 18. Each peer participated in the swarm to reproduce and distribute the Motion Picture. *Id.* at ¶ 21.

### ii. Preliminary Identification of Defendants.

Copyright Defenders engaged in a process to identify direct infringers of Plaintiff's copyright and identified all Defendants in the following manner. *Id.* at ¶ 6, 9. Copyright Defenders' specially designed software is connected to a number of files of illegal versions of the Motion Picture. *Id.* at ¶ 24. All infringers connected to those files were investigated through downloading a part of the file placed on their computer. *Id.* This evidence is saved on Copyright Defenders' server and can be shown to the court as evidence if necessary. *Id.*

Once the searching software identified a user offering the file for download, the software obtained that user's IP address. *Id.* at ¶ 25. In addition to the Motion Picture file, Copyright Defenders downloads or otherwise collects publicly available information about the network user that is designed to help it identify the infringer. *Id.* Among other things, Copyright Defenders downloads or records for each file downloaded: a) the time and date at which the file or a part of

5

the file was distributed by the user; b) the IP address assigned to each user at the time of

infringement; c) the ISP for each defendant; and, in some cases, d) the video file's metadata

(digital data about the file); e) the BitTorrent client application (program) used by each user, f)

the global unique identifier for each file downloaded by each user, and g) the location of most

users (by state) at the time of download, as obtained by geolocation technology. *Id.* Copyright

Defenders creates evidence logs for each user and stores this information in a database. *Id.*

An IP address is a unique identifier that and ISP assigns to a user. *Id.* at ¶ 28. Each time a

subscriber logs on, he or she may be assigned a different IP address unless the user obtains a

static IP address. ISPs track the IP addresses assigned to subscribers and retain "user logs" for a

limited time. *Id.* These logs provide the most accurate means to connect an infringer's identity to

its infringing activity. *Id.* Although users' IP addresses are not automatically displayed on P2P

networks, any user's IP address is identifiable from exchanged packets of data. *Id.* at ¶ 29. The

manner in which Copyright Defenders determines a user's IP address varies by P2P network. *Id.*

An infringer's IP address is significant because it becomes a unique identifier that, along

with the date and time of infringement, specifically identifies a particular computer. *Id.* at ¶ 30.

However, the IP address alone does not enable Copyright Defenders to ascertain with certainty

the exact physical address of the computer or to determine the infringer's identity/contact

information. *Id.* It only enables Copyright Defenders to trace the infringer's access to the Internet

to a particular ISP and, in some instances, to a general geographic area. *Id.*

Here, the identified IP addresses enable Copyright Defenders to determine which ISP was

used by each infringer to gain access to the Internet. *Id.* at ¶ 31. Publicly available databases

located on the Internet list the IP address ranges assigned to various ISPs. *Id.* However, some

ISPs lease or otherwise allocate certain IP addresses to unrelated, intermediary ISPs. *Id.* Since

these ISPs have no direct relationship—customer, contractual, or otherwise—with the end-user, they are unable to identify the Doe Defendants through reference to their user logs. *Id*. The intermediary ISPs' own user logs, however, should permit identification of the Doe Defendants. *Id*. Copyright Defenders determined that the Doe Defendants here were using the ISPs listed in Exhibit A to Plaintiff's Complaint together with various other ISPs, to gain access to the Internet and distribute and make available for distribution and copying the Motion Picture. *Id*.

### iii. Plaintiff's Confirmation of Copying.

Copyright Defenders confirmed the files it downloaded were actual copies of the Motion Picture through a visual comparison between downloaded file and the work itself. *Id*. at ¶ 34. As to Plaintiff's copyrighted Motion Picture, Mr. Padewet or one of his assistants visually compared the downloaded file with the original Motion Picture to confirm infringement. *Id*. at ¶ 35.

### iv. The Specific Information Plaintiff Seeks.

Exhibit A to the Complaint provides the Court with IP addresses identified for Doe Defendants that infringed the Motion Picture and their ISPs. Complaint at Ex. A and ¶ 59. This data constitutes the information obtained up to the date of the filing of the Complaint. Plaintiff specifically requests leave to conduct discovery on the Doe Defendants' ISPs it has been able to identify, in order to learn their identities including name and contact information.

Using the above methodology, and acting on behalf of Plaintiff, Copyright Defenders identified at least the following information regarding each Doe Defendant: a) the time and date at which the file or a part of the file was distributed by the user; b) the IP address assigned to each user at the time of infringement, and c) the ISP providing service to the each user at the time of infringement; and, in some cases, d) the video file's metadata, e) the BitTorrent client

application used by each user, f) the global unique identifier for each file downloaded by each user, and g) the location of most users at the time of download. Mr. Padewet Decl. at ¶ 25.

Despite Copyright Defenders' best efforts, it is impossible for Plaintiff to identify Defendants by name at this time. *See, id.* at ¶ 30. The true names of Defendant Does 1-96 are within the custody and control of each Defendant Doe's ISP which maintains billing records associated with each IP address. *See, id.* at ¶ 32. Copyright Defenders has identified the ISPs associated with Defendant Does at this time. Exhibit A to Complaint.

### c.  Plaintiff Can Show that Good Cause Exists for the Expedited Discovery.

The Eastern District of Missouri has considered three factors to determine that good cause exists when granting motions for expedited discovery to identify anonymous Internet users: 1) irreparable harm from infringement; 2) no prejudice to the defendants; 3) forward movement of the case. *Arista*, 2008 WL 4104563, at *1. Plaintiff easily meets these three factors.

### i.  Plaintiff can show Irreparable Harm from the Past and Ongoing Infringement of the Copyrighted Motion Picture.

Plaintiff has suffered and will continue suffering irreparable harm from the unauthorized copying of its Motion Picture. The elements of copyright infringement are 1) ownership of a valid copyright and 2) copying of original elements of the copyrighted work. *Warner Bros. Entm't Inc. v. X One X Prods.*, 644 F.3d 584, 597 (8th Cir. 2011). Plaintiff's copyright in the Motion Picture is valid. Complaint ¶¶ 28-32 and Exhibit B (Copyright Registration).

Copying of original elements can be shown by access to the copyrighted material and substantial similarity between the infringing work and the copyrighted work. *Warner Bros.*, 644 F.3d at 597. Defendants had access to the film in question: it is a popular film, particularly among BitTorrent users. *Metro–Goldwyn–Mayer, Inc. v. Am. Honda Motor Co.*, 900 F. Supp. 1287, 1297 (C.D. Cal.1995). Substantial similarity exists between the copyrighted work and the

8

allegedly infringing work. Mr. Padewet Decl. at ¶¶ 34-35. The hash file at issue provided access

to an unauthorized copy of Plaintiff's copyrighted Motion Picture. Complaint at ¶¶ 20-22.

Copyright Defenders visually compared the motion picture downloaded from the hash file with

the copyrighted Motion Picture. Mr. Padewet Decl. at ¶¶ 34-35. Copyright Defenders confirmed

that the material downloaded from the hash file contains a substantial portion of the copyrighted

Motion Picture. *Id.*; Complaint at ¶ 33.

Despite this exclusive ownership, Defendants are engaged in a joint act of infringement –

each Doe used BitTorrent to copy and reproduce the Motion Picture resulting in its unauthorized

dissemination. As a result of this infringement, Plaintiff suffered and continues to suffer from

lost sales and Plaintiff is entitled to statutory damages. 17 U.S.C. § 504. Plaintiff further states a

*prima facie* claim for copyright infringement that would survive a motion to dismiss by alleging

a claim for contributory infringement. *Raw Films*, 2012 WL 684763, at *2. Each defendant was a

willing and knowing part of the swarm for purposes of infringing conduct. *Id.*; Complaint at ¶ 6.

### ii.   The Expedited Discovery will Cause no Prejudice to Defendants.

Plaintiff seeks contact information for the individual subscribers. Because of the partially

anonymous nature of Defendants' distribution system, Copyright Defenders is unable to

determine the Does' names and addresses. Mr. Padewet Decl. at ¶ 31. Plaintiff now seeks this

limited information from ISPs. The discovery is narrowly tailored to obtain only the information

required. *Raw Films*, 2012 WL 684763 at *3. Discovery of this information will not prejudice

defendants: Plaintiff will use this information for the limited purpose for enforcing its copyright.

### iii.   The Forward Movement of the Case Turns on the Information Sought by the Expedited Discovery, which has Limited Availability.

As set forth above, each ISP assigns a unique IP address to each subscriber and keeps

track of the IP addresses for these subscribers. Mr. Padewet Decl. at ¶¶ 31-32. The true names

and capacities of Defendant Does 1-96, including subscriber information for each, are within the custody and control of each Defendant Doe's ISP. *Id.* Because ISPs provide a service to subscribers, *i.e.*, provide an IP address for Internet access, the ISPs must maintain contact information and billing records for each Defendant Doe in order to receive compensation for such services. *Id.* Thus, these ISPs can provide this identifying information to Plaintiff.

In *Digital Sin*, the court found Plaintiff had no other way of obtaining the identities of BitTorrent infringers other than expedited discovery. 279 F.R.D. at 241-242. Specifically, "absent a Court-ordered subpoena, many of the ISPs…are effectively prohibited by 47 U.S.C. § 551(c) from disclosing the identities of the putative defendants to Plaintiff." *Id.* In fact, the *Digital Sin* court recognized that there is no other indication or ruling in any other court throughout the country "that the plaintiffs have any reasonable alternative to these subpoenas to obtain the identities of the alleged infringers." *Id.* Even further, "without granting plaintiff's request, the defendants cannot be identified or served and the litigation cannot proceed." *Id.*

Finally, just as *Raw Films*, this Court has recognized that "the information regarding the identity of the IP subscriber is available only for a limited time." *Arista*, 2008 WL 4104563, at *1. Expedited discovery is necessary because IP data can be lost forever due to routine deletion by ISPs. *Digital Sin*, 279 F.R.D. at 241-242. *See also Raw Films*, 2012 WL 684763, at *3.

### d. The Discovery Sought is Proper as to All 96 Doe Defendants.

Federal Rules of Civil Procedure Rule 20(a)(2) allows multiple defendants to be joined in one action. Rule 20 is a two-prong test that allows joinder when: 1) claims arise out of the same transaction, occurrence or series of transactions and 2) there is at least one common question of law or fact linking all of the claims. *Coke v. Loadmaster Corp.*, 420 Fed. Appx. 647, 648 (8th Cir. 2011). District courts should take a liberal approach to permissive joinder. *United Mine*

10

*Workers v. Gibbs*, 383 U.S. 715, 724 (1966). Joinder decisions in BitTorrent cases are highly

dependent on the information plaintiff presented regarding: 1) the nature of the BitTorrent

protocol, and 2) the specificity of the allegations of the Defendants' alleged infringement.

*Patrick Collins, Inc. v. Does 1-2,590*, 2011 WL 4407172, at *5. At the early stages of a lawsuit

joinder is appropriate where, as here, "the complaint sufficiently *alleges* that defendants are

properly joined due to the use of BitTorrent, which necessarily requires each user to be an

uploader as well as a downloader." *Raw Films*, 2012 WL 684763, at *4 (emphasis in original).

### i. Each Doe Defendant Participated in the Same Transaction or Occurrence or Series of Transactions.

All Defendants in suit acted within one swarm to copy and reproduce the Motion Picture.

Each defendant's activity was part of the same transaction, occurrence, or series of transactions.

> ...it is difficult to see how the sharing and downloading activity [of BitTorrent] – a series
> of individuals connecting either directly with each other or as part of a chain or "swarm"
> of connectivity designed to illegally copy and share the exact same copyrighted file –
> could *not* constitute a "series of transactions or occurrences" for purposes of Rule 20(a).

*Digital Sin*, 279 F.R.D. 239, 244 (emphasis in original). Other courts agree:

> ...joinder [is] appropriate at this early stage of litigation because the plaintiff asserts a
> right to relief against all Doe defendants that appears, given the technology involved, to
> arise out of the same series of transactions or occurrences and because common questions
> of law or fact seem to be raised with respect to all Doe defendants by virtue of the use of
> BitTorrent to transmit the same copy of the plaintiff's Work.

*Raw Films,* 2012 WL 1019067, at *2 -3 (E.D. Pa. Mar. 26, 2012).

> ...each unknown individual is a possible source and may be responsible for distributing
> the movie to the other unknown individuals, who are also using the same file sharing
> protocol to copy the identical copyrighted material.

*AF Holdings v. Does 1-1,058,* --- F. Supp. 2d ----, 2012 WL 3204917, at *12.

BitTorrent sharing is inherently suitable to the joinder analysis: "the pieces of the Work

copied by each defendant may have been transmitted by or subsequently sent to other

defendants, albeit indirectly, because 'recipient peers ... automatically begin delivering the piece they just received to other peers in the same swarm.'" *Raw Films*, 2012 WL 1019067, at *4 (citations omitted). A link exists even absent direct interaction among swarm members: "[e]ven if no Doe defendant directly transmitted a piece of the Work to another Doe Defendant, the Court is satisfied that at this stage of the litigation the claims against each Doe Defendant appear to arise out of the same series of transactions or occurrences, namely, the transmission of pieces of the same copy of the Work to the same investigative server." *Id.* Such analysis applies even to a broad time frame of IP addresses. *AF Holdings v. Does 1-1,058,* --- F. Supp. 2d ----, 2012 WL 3204917, at *12 (holding there is no basis to rebut, at an early stage, that IP addresses identified as infringing four months apart were, at least potentially, part of the same swarm and provided or shared pieces of the plaintiff's copyrighted work.)

As set forth above, each Doe Defendant intentionally logged into a BitTorrent client repository, obtained a torrent file for Plaintiff's Motion Picture, loaded the file into a computer program, initiated simultaneous connections with other users and shared copies of the file for Plaintiff's Motion Picture, including with, upon information and belief, other identified Doe Defendants. Mr. Padewet Decl. at ¶¶ 6, 10-18; Complaint at ¶¶ 9-11. The program coordinated the piece by piece copying of Plaintiff's Motion Picture, and these downloaded pieces were then immediately available to all other Defendants. *Id.* These actions formed a single swarm among the 96 Defendants. Complaint at ¶¶ 5, 53 and Exhibit A. Each of the peers is a member of this single swarm, connected for the purpose of sharing of the particular hash file and for the purpose of the reproduction and distribution of Plaintiff's copyrighted Motion Picture. Mr. Padewet Decl. ¶¶ at 21, 23; Complaint at ¶¶ 9-11. Thus, Defendants acted in concert in effectuating the

unauthorized sharing of Plaintiff's copyrighted Motion Picture. Geolocation technology places all 96 of the infringing Does in Missouri. Complaint at ¶ 3; Exhibit A to Complaint.

Many Doe Defendants also acted in concert with other Doe swarm members by "Peer Exchange." Mr. Padewet Decl. at ¶ 19. Peer Exchange is a communications protocol built into almost every BitTorrent protocol which allows swarm members to share files more quickly and efficiently. *Id.* Doe Defendants also likely acted in concert with other Doe swarm members by linking together globally through use of a Distributed Hash Table which is a sort of world-wide telephone book, which uses each file's "info-hash" (a unique identifier for each torrent file) to locate sources for the requested data. Mr. Padewet Decl. at ¶ 20. By allowing swarm members to rely on individual computers, rather than a central "tracker" computer, this means that every client sharing this data is also helping to hold this worldwide network together. *Id.*

The nature of the BitTorrent protocol shows that Doe Defendants not only directly infringed Plaintiff's copyright, but also contributed to the infringement of other members of the swarms. For example, Doe number 23 of Missouri was a participant in the BD94 hash and related swarm at least on November 10, 2012. Complaint at Exhibit A. Because of the collective and interdependent nature of the BitTorrent protocol, Doe number 23's participation on November 10, 2012 strengthened the BD94 swarm for all subsequent participants. *Id.*

Just as in *Raw Films*, Plaintiff's right to relief appears, given the technology involved, to arise out of the same series of transactions or occurrences. Even where courts have found that BitTorrent activity does not arise out the same series of transactions or occurrences, Rule 20 joinder is proper in that plaintiff has sufficiently pled "'shared, overlapping facts,' giving rise to Plaintiff's claims of infringement to make joinder presently proper." *Third Degree Films*, 2012 WL 2522151, at *9 (*quoting In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. May 4, 2012)).

### ii.   There are Questions of Law or Fact Common to All Defendants.

The second requirement of Rule 20 joinder is that a question of law or fact common to all of the defendants will arise in the action. *Coke*, 420 Fed. Appx. at 648. "Fed. R. Civ. P. 20(a) allows joinder of parties where '*any* question of law or fact common to all plaintiffs' is present." *McCoy v. St. Louis Pub. Schools*, No. 4:11-CV-918 CDP, 2011 WL 4857931, at *3 (E.D. Mo. Oct. 13, 2011) (emphasis in original). The *AF Holdings v. Does 1-1,058* court supported joinder under this element, finding "[a]t this procedural juncture, the claims against the unknown individuals infringing the plaintiffs copyright are identical." 2012 WL 3204917, at *13. The *Raw Films* court agreed, stating "common questions of fact are likely to arise along with the legal standards for direct and contributory copyright infringement liability." 2012 WL 1019067, at *4.

Here, each defendant is accused of unlawfully copying the same Motion Picture and utilizing a single hash identifier to obtain and share his or her copy. Mr. Padewet Decl. at ¶¶ 16-18, 21. Copyright Defenders confirmed the hash identifier provides access to a copy of the copyrighted Motion Picture. *Id.* at ¶¶ 23, 34-35. These common questions of fact are sufficient for joining all defendants. *Patrick Collins, Inc. v. Does 1-2,590*, 2011 WL 4407172, at *6. Also, each defendant utilized BitTorrent protocol to obtain unlawful copies, and Plaintiff will need to explain how through a common investigation it was able to identify each infringer and collect evidence regarding the infringing activities. *Id.* These factual issues will be essentially identical for each defendant. *Id.* While each defendant may later present different factual and substantive legal defenses, "this does not defeat, at this stage of the proceedings, the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B)." *Id.* (quoting *Call of the Wild Movie*, 770 F. Supp. 2d at 343). However, given the evidence (*e.g.*, the identified IP addresses performed uploads that ISPs will link to specific individuals), such defense would fail.

14

### iii.  There is no Prejudice to any Party or Needless Delay.

Joinder of defendants who infringed the same copyrighted material promotes judicial efficiency. *Id.* at *7. *See also London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass. 2008). The District of Columbia recently agreed:

> …joinder of the claims against the unknown individuals associated with the Listed IP Addresses at this procedural juncture presents the most efficient mechanism for the plaintiff to obtain the identifying information required to evaluate the claims against each individual, protect its copyrighted work, and for judicial review of the plaintiff's claims.

*AF Holdings v. Does 1-1,058*, --- F. Supp. 2d ----, 2012 WL 3204917, at * 11. It is in the interest of justice, the protection of the copyright, to allow case consolidation. To require Plaintiff to pursue each individual defendant "would certainly not be in the 'interests of convenience and judicial economy,' or 'secure a just, speedy, and inexpensive determination of the action.'" *Id.* at *7 (citation omitted). The Defendants are currently not identified by name, only by their IP addresses. Thus, they are not yet required to respond to Plaintiff's allegations, to assert a defense, or to oppose Plaintiff's motion for leave to take discovery. *Patrick Collins, Inc. v. Does 1-2,590*, 2011 WL 4407172, at *7. The Doe Defendants cannot show any harm or prejudice at this time.

## III.  Conclusion

Thus, Plaintiff PHE, Inc. respectfully seeks leave of Court to serve limited discovery prior to a Rule 26(f) conference on non-party ISPs to determine the true identities of the Doe Defendants, and for all other relief as the Court deems just and proper.

Respectfully submitted,
PLAINTIFF PHE, INC.

By its attorneys,
SIMMONS BROWDER GIANARIS
ANGELIDES & BARNERD LLC

15

Dated:  December 12, 2012          By: */s/ Paul A. Lesko*
                                       Paul A. Lesko – E.D. Mo. Bar No. 51914
                                       One Court Street
                                       Alton, IL 62002
                                       (618) 259-2222
                                       (618) 259-2251-*facsimile*
                                       plesko@simmonsfirm.com


## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2012, I electronically filed the foregoing document via

the Court's ECF, electronic email system, upon all of record:


/s/ Paul A. Lesko

16