**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**ST. LOUIS DIVISION**

| | |
|---|---|
| PHE, INC. | |
| PLAINTIFF, | |
| V. | Case No. 4:12-cv-02296-HEA |
| DOES 1 – 96, | |
| DEFENDANTS | Hon. Judge Henry E. Autrey[1] |

**MOTION TO PROCEED ANONYMOUSLY (FED. R. CIV. P. 8), MOTION TO SEVER (FED. R. CIV. P. 21), MOTION TO QUASH SUBPOENA (FED. R. CIV. P. 45),**

NOW COMES, JOHN DOE 52, ("Doe") by and through counsel,[2] who moves this Court for leave to proceed anonymously, to quash the subject subpoena, and to sever him from this action. In support of his[3] Motions, Doe provides the attached Exhibits, and states to the Court as follows:

> [T]he Court is troubled by many aspects of this "swarm joinder" model for copyright litigation. Courts across the country have observed that the companies involved in this type of litigation do not seem interested in actually litigating their copyright claims. Rather, they appear to be using the federal courts only to obtain identifying information for the ISP owners and then attempting to negotiate a quick settlement.

*PHE Inc. v. Does 1-105*, Case No. 1:12-cv-3342-WJM-KLM (ECF Doc. 6 at 9) (D.C. Colo Jan 4, 2013).

I.   **INTRODUCTION**

1.   *Case history & parties*

PHE, Inc. ("PHE"), one of the largest pornographers in the country, has joined in the tsunami of mass-Doe lawsuits being brought across this country.  As of June 24, 2013, PHE has filed suits in Colorado, Illinois and, here, in Missouri, which name hundreds of John Does as

---

[1] Counsel apologizes for his typographical error in Your Honor's name in the previously filed Motion.
[2] Jonathan LA Phillips, *pro hac vice*.
[3] John Doe will be referred to as a male throughout this document.

defendants.  *See* attached Exhibit A.  One of those actions, the matter at hand, was brought in this Court on December 12, 2012.  (ECF Doc. 1).  The suit claims that Doe downloaded and distributed a pornographic parody of Buffy the Vampire Slayer.

In the Complaint, Doe, and 95 other unrelated and unnamed people, were accused of downloading and uploading the Work at completely distinct times spanning nearly a month.  PHE filed a motion for expedited discovery, which was granted.  (ECF Docs. 4, 10).  PHE then sent subpoenas to Internet service providers in order to harvest identifying information[4] for each John Doe. Doe's Internet service provider sent Doe a letter and a copy of the subpoena, alerting him to this litigation.

2.   *Mass Doe Suits*

It is manifest that copyright holders have the ability to enforce their rights, including by bringing suit.  In fact, if there are many infringements on those rights, the judiciary and bar should expect many suits to be filed. However, it must also be acknowledged that the federal judiciary has created safeguards to protect, for one, wrongly named defendants.   In mass-Doe copyright litigation such as this, which implicates issues of fundamental fairness, privacy, and due process, these protections are even more significant.

As noted above, this case is one drop of water in the tsunami of mass-Doe lawsuits brought throughout the United States. PHE, bringing a case in Colorado <u>with the same exact "swarm,"</u>[5] has been judicially recognized as part of the "outbreak of similar litigation . . . around the country in which copyright holders have attempted to assert claims against multiple unknown defendants by joining them, in often large numbers, into a single action."  *PHE, Inc. v. Does 1 –*

---

[4] Anything beyond a name and address does not bear on the ability to have Doe served in any manner.  Considering the past actions of other mass-Doe plaintiffs, such information would likely only be used to harass, intimidate, and otherwise attempt to coerce a settlement out of this Doe and other Does.
[5] Hash File BD9418995FBB78D888D7208003B7A00DC6B6980D

*105*, Case No. 1:12-cv-03342-WJM-KLM (ECF Doc. 6, p. 2-3) (D.C. Colo. Jan 4, 2013), *citing, Raw Films, Inc. v. Does 1-32*, 2011 WL 6840590, *1 (N.D. Ga. Dec. 29, 2011).  Fundamental features of these suits include:

(1) the filing of a single suit seeking the identity of a large number of Does – while only having to pay a single filing fee;[6]

(2) vague allegations of copying a protected work – almost all pornographic with embarrassingly obvious pornographic titles;

(3) early discovery in the form of subpoenas to ISPs to obtain personally identifying information, despite the lack of support for the allegation that the person being billed for internet service was actually the purported infringer, or even knows who the purported infringer is; and

(4) questionable representations made in obtaining the right to expedited discovery, that go uncontested due to the *ex parte* nature of the proceedings up to that point.

Many courts have acknowledged predatory reputation of these plaintiffs, and note that civil procedures could be inappropriately used to coerce settlements from innocent persons who would rather pay a nuisance value settlement than face shame and embarrassment for downloading pornography.  *See, e.g. PHE, Inc. v. Does 1 – 105*, Case No. 1:12-cv-03342-WJM-KLM (ECF Doc. 6, p. 9) (D.C. Colo. Jan 4, 2013) (same Plaintiff)*; Raw Films, Ltd, v. Does 1-32,* No. 11-cv-00532-JAG, 2011 U.S. Dist. LEXIS 149215, *6-7 n. 5 (E.D. Va. Dec. 29, 2011).  Only a small fraction of alleged infringers are ever actually served with process in these actions.   One possible explanation, and a probable one, is that harassing a few dozen settlements out of hundreds of

---

[6] If PHE appropriately brought separate suits in this matter, filing fees would be $33,600, not $350.

defendants[7] is lower risk and lower cost when compared to possibly paying the John Doe's attorney's fees and costs, if John Doe is wrongly accused.  17 U.S.C. § 505.

It can be expected that PHE, like most mass-Doe plaintiffs, will appeal to the Court stating that there is no other way for them to protect their rights.  This is simply not the case, and goes to show that the true purpose of the litigation is coercing settlements, not protection of rights.  Major motion picture studios, with, arguably, more to lose than PHE have perfectly capable means of protecting their rights, which PHE could utilize.  However, PHE would not make inordinate amounts of money coercing nuisance value settlements doing so.

In 1998, the Digital Millennium Copyright Act went into effect and has provided a regime to protect copyright interests such as those before the Court.  It is telling that this cheaper and more efficient tool is utilized by major motion picture studios and recording industry representatives (RIAA).  This use has obviated – for the most part – the utilization of costly publicly subsidized dispute resolution processes by these organizations.[8]  By simply serving a DMCA Take Down Notice to an Internet Service provider, pursuant to 17 U.S.C. § 512, PHE could have protected its rights.  The Internet service providers, who would be liable for damages if they did not comply, would typically send notices to Does and suspend the accounts of repeat offenders.  Thus, so-called pirates have their ships scuttled.

Additionally, many major Internet service providers take part in the Copyright Alert System.[9]  This, admittedly, private[10] system is commonly referred to as the six strikes program.

---

[7] For a typical example of this kind of behavior, one need look no further than another case involving the same swarm filed in Colorado. When that judge *sua sponte* severed 104 of the Does, PHE, Inc. did not bother bringing separate actions against them, despite having over five-months to do so.

[8] However, this obviously does not allow PHE to collect settlements from dozens of Does.

[9] This system was developed by reputable Motion Picture Association of America members Walt Disney Studios Motion Pictures, Paramount Pictures, Sony Pictures Entertainment, Twentieth Century Fox Film Corporation, Universal Studios, and Warner Brothers Entertainment, as well as music industry representatives (RIAA, IFTA) and Internet service providers.

Hainen, K., *Movie, TV and Broadband Leaders Team to Curb Online Content Theft*.  Recording Industry   Assoc.   of   America   Press   Release   (July   2011),   *available at,http://www.riaa.com/newsitem.php?content_selector=newsandviews&news_month_filter=7&news_year_filter=2011&id=2DDC3887-A4D5-8D41-649D-6E4F7C5225A5*.  With this system, the traffic on ISPs is monitored, and any copyright infringements detected result in graduated responses. Early reminders as to the rights held by companies like PHE are later replaced with mitigation measures such as throttling of an ISP subscriber's bandwidth.  While providing an economical solution to the piracy problem, it also prevents innocent Does from being alleged to do anything illegal.  Instead, innocent, misidentified Does will be educated regarding alleged infringement and will be able to take steps to correct the same – e.g. securing a wireless router, having a parent supervise a child who may have illegally downloaded, or otherwise.  Clearly, PHE has means to protect its rights that don't amount to publicly subsidized shakedowns of innocent Does.

## II.  LEGAL ARGUMENT

### A.  Doe should be permitted to proceed in this case anonymously

Doe's privacy interest outweighs that of the public knowing his identity.  Accordingly, if Doe must proceed in this case, he should be allowed to do so anonymously, at least through dispositive motions.

Many courts have recognized the right of some parties to proceed anonymously in "matters of a sensitive and highly personal nature."  *See, e.g., Malibu Media, LLC v. Reynolds*, Case No. 12-cv-6672, (ECF Doc. 51, at 11) (N.D. Ill Mar. 7, 2013).  When the harm from concealment of an identity is less than that of the likely harm to the party seeking to proceed anonymously, anonymous participation is allowable.  *Doe v. City of Chicago*, 360 F.3d 667, 669

---

[10] While PHE is entitled to "its day in Court," as are all whose rights are infringed, it would be a fallacy to say there is no manner to protect itself when both a private system and a federal law provide remedies.

(7th Cir. 2004) (involving a plaintiff who whished to proceed anonymously, rather than a defendant). The "allegation that an individual illegally downloaded" pornography goes to matter judicially recognized to be "sensitive and highly personal." *Third Degree Films, v. Does 1 – 3577,* Case No. 11-cv-02768-LB, 2011 U.S. Dist. LEXIS 128030, *11 (N.D. Cal Dec. 15, 2011); *see also, Malibu Media, LLC v. Reynolds, supra,* at pp. 13-14 (considering the fact that the activity alleged to have occurred at a certain IP address may have nothing to do with the bill payer and holding that "allowing Doe to proceed by pseudonym is, at least at this state of the proceedings, appropriate.")

Courts have also specifically recognized the possibility of mass-Doe litigants using shame and embarrassment as tools to extract settlements.  Recognizing this possibility, the court analyzed the harm to the public, finding it to be minimal. *Id.*  Accordingly, the court found that the public's interest does not override the privacy interest of Does in this sort of litigation. *Id.*  This position is in line with the majority of the District Courts that have had dozens, if not hundreds of mass-Doe suits before them.

Concerns before this Court today include a likelihood of coercion into unjustified settlements and a matter of a highly personal nature – the allegation of downloading pornography. For these reasons, it is respectfully requested that this Court allow Doe to proceed anonymously in this case.

B.  The subpoena should be quashed

Doe has standing to challenge the issued subpoena, which should be quashed as (i) seeking irrelevant information and (ii) constituting an undue burden, annoyance and embarrassment to him.  Courts are supposed to quash any subpoena that requires the disclosure of a privileged matter or that subjects a person to an undue burden.  Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv)*; Malibu Media v. Reynolds,* Case No. 1:12-cv-6672 (ECF Doc. 51 p. 8) (N.D.

Ill. Mar. 7, 2013).  This Court has discretion in discovery issues, which would include quashing subpoenas.  *See, Credit Lyonnais v. SCG Int'l, Inc.*, 160 F.3d 428, 431 (8ᵗʰ Cir. 1998).

> 1.  *Doe has a privacy interest, giving him standing and providing grounds for quashing the subpoena*

A party has standing to challenge a third-party subpoena if there is a claim of privilege or if there is an implication of a privacy interest.  *Malibu Media v. Reynolds*, Case No. 12-cv-6672 (ECF Doc 51 p. 9) (N.D. Ill. Mar. 7 2013), *citing*, *United States v. Raineri*, 670 F.2d 702, 712 (7ᵗʰ Cir. 1982).  Courts have recognized the sufficiency of even a minimal privacy interest for this purpose. *Sunlust Pictures, LLC v. Does 1-75*, No. 12 C 1546, WL 3717768, at *2 (N.D. Ill. Aug. 27, 2012), *see also, Third Degree Films, Inc. v. Does 1-108*, No. 11-3007 (ECF Doc. 31 at 6), 2012 WL 669055, *2 (D. Md. Feb. 28, 2012) ("however minimal or 'exceedingly small' the Doe Defendants' interests are here, parties need only have some personal right or privilege in the information sought to have standing to challenge a subpoena to a third party.")  In fact, Congress has recognized that subscribers have a privacy interest in their personally identifying information held by ISP's. *See, e.g.,* 47 U.S.C. § 551, *as noted in, Discount Video Ctr., Inc. v. Does 1-29,* Case No. 12-cv-10805-NMG, 2012 US Dist. LEXIS 112518, 15 (D. Mass. Aug. 10, 2012).[11]  Even if Doe is not the party subpoenaed, he has a "sufficient interest to warrant his intervention," and accordingly, he has standing, "notwithstanding that [he] is not the party subpoenaed."  *Taylor v. Litton Med. Products, Inc.*, 19 Fed. R. Serv. 2d 1190, 1975 WL 166114, *3 (D. Mass.  Jan. 23, 1975).

Here, just as in *Sunlust,* Doe has a privacy interest in his personally identifying information held by his ISP – the information sought by the subpoena.  Accordingly, he has standing to challenge the subpoena.  Additionally, his privacy interest constitutes a privileged matter.  Insofar as it is a privileged matter, this Court can quash the subpoena on that ground as well.

---

[11] Many other courts have held the same, including, *Hard Drive Prods., Inc. v. Does 1-188,* F.Supp.2d 1150 (N.D. Cal. 2011); *Nu Image, Inc. v. Does 1-3932,* Case No. 11-cv-00545 (ECF Doc. 244)(M.D. Fla. May 23, 2012).

2.   *The subpoena does not seek relevant information and should be quashed*

First and foremost, discovery is only appropriate when the information sought is <u>relevant</u>. Fed. R. Civ. P. 26(b)(1).   Information sought must be "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

Courts have already concluded, some time ago, and repeatedly restated, that the person paying an Internet bill – the information sought by the subpoena – may not be the purported infringer.  *See, e.g. SBO Pictures, Inc. v. Does 1-3,036,* Case No. 11-cv-4220 (ECF Doc. 14), 2011 WL 6002620, at *3 (N.D. Cal Nov. 30, 2011)*; VPR Internationale v. Does 1-1,017*, Case No.11-cv-02068 (ECF Doc. 15 at 2) (C.D. Ill. Apr. 29, 2011) ("Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect . . . [t]he infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.").

In its Complaint, PHE went to great lengths to explain how BitTorrent works, but ignored that the IP address no more identifies the alleged infringer than a telephone number identifies who is talking on a phone in a home with many different residents.  *See, PHE, Inc. v. Does 1 – 105*, Case No. 1:12-cv-03342-WJM-KLM (ECF Doc. 6, p. 7) (D.C. Colo. Jan 4, 2013) (noting that similar cases in that district have had businesses allege patrons infringed, some identified as infringers are grandparents that don't even know what BitTorrent is, and so on) (same Plaintiff, <u>same swarm</u>).

Additionally, in order to be relevant to this proceeding, the information would have to lead to admissible evidence.  Fed. R. Civ. P. 26(b)(1).  By speaking to "admissible evidence," the Rule clearly implicates putting forth evidence – part of pursuing a claim on its merits – something mass-

Doe plaintiffs do not do.  No mass-Doe plaintiffs have had a full trial.[12]  Courts have recognized

with these cases, "almost all end in settlement and few, if any, are resolved on their merits." *Third*

*Degree Films, Inc.*, 2012 U.S. Dist. LEXIS 59233, *11-12, *see also*, *PHE, Inc. v. Does 1 – 105*,

Case No. 1:12-cv-03342-WJM-KLM (ECF Doc. 6, p. 7) (D.C. Colo. Jan 4, 2013) ("Our federal court

system provides litigants with some of the finest tools available to assist in resolving disputes; the

courts should not, however, permit those tools to be used as a bludgeon") (citation omitted) (same

Plaintiff, same swarm); *Malibu Media LLC v. John Does 1-10*, No. 12-03623 (ECF Doc. 7 at 6),

2012 U.S. Dist. LEXIS 89286 at *8-9 (C.D. Cal. June 27, 2012) ("The federal courts are not cogs in

a plaintiff's copyright-enforcement business model.  The Court will not idly watch what is essentially

an extortion scheme, for a case that plaintiff has no intention of bringing to a trial.").  In short, courts

across the country have recognized that the information sought is not for the purpose of being

"admissible," in the pursuit of mass-Doe plaintiffs' claims.  Accordingly, the information is irrelevant.

    Applying these principles, the only discoverable information must relate to bringing

copyright claims.  The only information that PHE wishes to harvest from the ISPs is the bill-payer's

identity, along with other irrelevant information.[13]  As acknowledged by many courts, the bill-payer

may not be the infringer in these cases, and in fact, the actual infringer may be a total stranger. It

would not be a "reasonable calculation that the individuals connected to the subpoenaed IP

addresses will have any discoverable information related to the current defendants."  *Pacific*

*Century Int'l, v. Does 1-37*, 282 F.R.D. 189, 195 (N.D. Ill. Mar. 30, 2012).

    Finally, even if this Court were to determine that some of the information sought was

discoverable, only the identity and address of the bill-payer could be relevant.   Any other

---

[12] Malibu Media LLC's single bellwether trial, out of thousands of cases, with no cross-examination, and a defendant who engaged in spoliation of evidence can hardly be considered a full trial. *See, Malibu Media v. Does*, Case No. 12-cv-2078 (ECF Doc. 203) (E.D. Penn. June 18, 2013).

[13] Only the address and name are relevant for serving Doe in this matter.  It is suggested that all other information is woefully irrelevant and only for the purpose of allowing for the harassment of Doe.

information sought would not bear on the claims in any manner and could be used as a tool to annoy, harass, and embarrass Doe into a coerced settlement.

For the foregoing reasons, Doe respectfully requests that this Court exercise its discretion, note that the information sought is irrelevant, and quash the subpoena.

3.  *The subpoena is brought for an improper purpose, and should be quashed, as it subjects Doe an undue burden, harassment, and annoyance*

There is certainly no requirement that this Court turn a blind eye to the true purpose of the subpoenas issued.  *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 353 (1978).  Courts across the country have already recognized that the tactics employed here are for the purposes of farming information and coercing and negotiating unfair settlements.  *Pacific Century Int'l,* 282 F.R.D. at 195, *see also, Malibu Media*, 2012 U.S. Dist. LEXIS 89286 at *8-9 (acknowledging the real purpose and the business model to be an "extortion scheme"), *See also, PHE, Inc. v. Does 1-105*, Case No. 12-cv-3442 (ECF Doc. 6, p. 10) (Colo. Jan 4, 2013) (agreeing with other courts) (same Plaintiff, same swarm).  The mass-Doe plaintiff's business model necessarily results in "unnecessary, broad, and prejudicial early discovery."  *See, e.g. Hard Drive Prods., Inc. v. John Doe,* No. 11-cv-8333, 2012 U.S. Dist. LEXIS 89938, *9 (N.D. Ill. June 26, 2012).

Ordinarily, undue burden concerns lie with the entity having to respond to a subpoena. Admittedly, that would be Doe's ISP.  However, it does not take any stretch of the imagination to see how the subpoena imposes an undue burden upon Doe as well.  It is an undue burden to risk unjustified public embarrassment for an innocent defendant in any matter, let alone being publicly accused of downloading a pornographic parody of Buffy the Vampire Slayer.  It is an undue burden to be coerced into an unjust settlement.  It will be an undue burden, if this particular Plaintiff actually attempts to resolve the case on its merits, for an innocent non-infringer[14] have to proceed

---

[14] Doe categorically denies having downloaded the subject Work.  See Declaration of Doe (ECF Doc. 15-1).

in litigation.  It is an undue burden to be forced to spend time and money when mass-Doe plaintiffs do not actually attempt to resolve cases on their merits and put forth no reason to believe that Doe is the purported infringer.

These burdens, placed on Doe by the subpoena, certainly outweigh any interest in early discovery for the Plaintiff, who still has other remedies at its disposal.  *See, Nw Mem'l Hosp. v. Ashcroft*, 362 F.2d 923, 927 (7th Cir. 2004) (providing the that when the burden of compliance outweighs the benefit of production, it can be quashed).

In conclusion, Doe has standing to challenge the subpoena.  The subpoena does not seek any relevant information and can only subject Doe to undue burden, harassment, and annoyance. For these reasons, Doe respectfully requests that the subpoena be quashed.

C.  Joinder is improper because the defendants were not alleged to be simultaneously in the swarm

Permissive joinder of defendants is only appropriate when there is a common series of transactions and a common question of law amongst defendants.   Fed. R. Civ. P. 20(a)(2). Because this requirement is not met in this action, Doe should be severed and dropped. Courts have the power to "add or drop a party" on just terms.  Fed. R. Civ. P. 21.  The United States District Court for the District of Colorado, with the same Plaintiff, and the same swarm, *sua sponte* severed and dropped 104 Does for this reason.  *PHE, Inc. v. Does 1-105*, Case No. 12-cv-3442 (ECF Doc. 6, p. 10) (Colo. Jan 4, 2013).   Despite this, PHE four months later, served Internet service providers in this case.  *See,* ECF Doc. 10 (Apr. 29, 2013).

Many other courts have recently examined the question of "whether anonymous participation in the same BitTorrent swarm without a showing that the Defendants accessed the swarm at the same time is sufficient for joinder."  *Malibu Media v. Reynolds,* Case No. 12-cv-6672 (ECF Doc 51, at 16-17)(N.D. Ill.).  This is the precise issue before this Court.  In that case, when

discussing joinder, the court recognized that orders from as recent as eighteen months ago – at the time – were based upon a then undeveloped understanding of BitTorrent and litigation tactics employed by mass-Doe plaintiffs.  *Id.* at 22.  In the court's memorandum and order, it extensively examined and discussed the cases on both sides of the swarm-joinder theory.  *Id.* at 18 – 20.  This detailed analysis resulted in the court's adoption of the reasoning from cases that required simultaneous participation in a swarm.  *Id.* at 20.[15]  In the end, that court set an easy, workable, and appropriate standard, explicitly stating that:

> In order to join multiple anonymous defendants in a single suit for copyright infringement based on the alleged use of the BitTorrent protocol, a plaintiff must either (1) establish that the defendants were simultaneously present in the same swarm, or (2) show they accessed the swarm in close temporal proximity (within hours of one another, not days or weeks) such that it can be plausibly inferred that the defendants may have downloaded and uploaded content through the same series of transactions.

*Id.* at 26-27.  This standard was re-stated and re-affirmed as recently as March 20, 2013 by Judge Shadur in the Northern District of Illinois, who relied, in part, on a law review article supporting a joinder requirement of **simultaneous participation** in the swarm.  *Zambezia Film (PTY) Ltd. v. Does 1-60*, Case No 13-cv-1323 (ECF Doc. 7 at p. 3-4) (N.D. Ill. Mar. 20 2013)(emphasis Doe's).  About the same time, Judge Gorman – in the Central District of Illinois – stated that certain mass-Doe plaintiffs and their counsel were not to join Does in that Court.  *In Re BitTorrent Copyright Infringement Cases,* Case No. 1:12-cv-01189-MMM-JAG, Order and Opinion and Report and Recommendation, at 12 (C.D.Ill. Feb. 11, 2013)(recommending "that the Plaintiffs above and their counsel be directed that any future actions of a similar nature filed [in that court] be filed as separate actions against each John Doe").

---

[15] The court chose to adopt the reasoning of cases such as: *Sunlust Pictures, LLC v. Does 1-75,* No. 12 C 1546, 2012 WL 3717768, at *4 (N.D. Ill. Aug. 27, 2012)(observing that other courts required simultaneous participation); *Digital Sins, Inc. v. Does 1-245*, No. 11-8170, 2012 WL 1744838, *2 (S.D.N.Y. May 15, 2012)(finding improper joinder when the isolated downloads occurred over 59 days), among others.

Despite (i) the clear and announced standard of some courts, (ii) other nearby District Courts ordering future cases to be filed against individual Does, and (iii) another District Court's severing of Does for the same reason with the same Plaintiff and same swarm; PHE has joined ninety-six defendants who participated in a swarm, not simultaneously, but over the course of over nearly a month.  The Complaint, on its face, does not does not allege that Doe, or anyone on his router, simultaneously participated in the swarm with any other defendant.  With no simultaneous participation, there can be no joinder.  Accordingly, Doe should be severed from the immediate action, and dismissed.

Finally, it should be addressed that mass-Doe plaintiffs proactively avoiding severance have developed a tactic of pleading civil conspiracy.[16]  However there is "no reasonable calculation that the individuals connected to the subpoenaed IP addresses will have any discoverable information related to the current defendants."  *Pacific Century Int'l, at 195*.   However, assuming, *arguendo* there was some form of "conspire[ing]", thus agreement, PHE could ask an – inevitably – settling Doe the identity of Doe 52, making this discovery unnecessary.

PHE has failed to plead, or show, simultaneous participation in the swarm, and thus, not part of the same events that would allow for joinder.  Accordingly, Doe should be severed from this action, and dismissed, which he respectfully requests this Court do.

### III.  Conclusion

For the foregoing reasons, Doe respectfully requests entry of an Order quashing the subpoena at issue, severing and dismissing Doe from this action, and, if not, allowing Doe to proceed under the pseudonym Doe.

Respectfully submitted,

---

[16] In the case at hand, PHE alleges that the Does "conspired," but does not ever plead an agreement, or even attempt a civil conspiracy count.  Comp. ¶ 3 (ECF Doc. 1, p. 1).

/s/Jonathan LA Philips
Jonathan LA Phillips
One of Doe's Attorneys
418 Fulton St.
Ste. 255
Peoria, IL 61602
309.494.6155
jphillips@skplawyers.com
ARDC No. 6302752

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 22, 2013, he caused the foregoing, and all attachments referenced, to be filed with the Court via the CM/ECF electronic filing system, thereby serving all parties of record.   The undersigned additionally certifies that non-party Charter Communications was served by facsimile on the same date.

/s/ Jonathan LA Phillips